# Illinois Official Reports

## Appellate Court

---

### *Zollar v. City of Chicago Department of Administrative Hearings*,
### 2015 IL App (1st) 143426

---

| | |
|---|---|
| Appellate Court Caption | NIKKI ZOLLAR, Plaintiff-Appellant, v. THE CITY OF CHICAGO DEPARTMENT OF ADMINISTRATIVE HEARINGS and THE CITY OF CHICAGO ANIMAL CARE AND CONTROL COMMISSION, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-14-3426 |
| Filed | October 14, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2014-M1-450030; the Hon. Joseph Sconza, Judge, presiding. |
| Judgment | Confirmed. |
| Counsel on Appeal | AMR Law Group, LLC, of Chicago (Anna Morrison-Ricordati, of counsel), for appellant.<br><br>Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Irina Y. Dmitrieva, Assistant Corporation Counsel, of counsel), for appellees. |
| Panel | PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.<br>Justices Lavin and Hyman concurred in the judgment and opinion. |

**OPINION**

¶ 1    On September 13, 2013, plaintiff-appellant Nikki Zollar's 100-pound male bullmastiff, Eli, attacked Jib, a female Portuguese water dog weighing 39 pounds, in an alley in the city of Chicago (City). A city ordinance defines a "dangerous animal" as any animal that "bites, inflicts injury on, kills or otherwise attacks a human being or domestic animal without provocation." Chicago Municipal Code § 7-12-020 (amended Nov. 19, 2008). After an investigation, the City of Chicago Animal Care and Control Commission (Commission) declared Eli to be a dangerous animal. Zollar demanded and received an administrative hearing. No evidence was presented at the hearing that Zollar's dog was provoked–either by a human being or another animal–prior to the attack. Following the hearing, the "dangerous animal" classification was upheld, but because Jib's injuries were not deemed severe, Zollar was not required to euthanize Eli. Instead, the administrative decision required her to comply with conditions imposed by the ordinance such as posting a sign on her premises alerting passersby of the presence of a dangerous animal, muzzling the dog while off her property, implanting a microchip under the dog's skin, sterilization and maintenance of liability insurance. See Chicago Municipal Code § 7-12-050(c)(1)-(6) (amended Mar. 14, 2007). Zollar appealed the adverse decision to the circuit court of Cook County, which affirmed the decision. Zollar now appeals to this court. We likewise affirm.

¶ 2    Decisions of hearing officers under the Illinois Municipal Code are reviewed under the Administrative Review Law. 65 ILCS 5/1-2.2-50 (West 2014). As in any appeal from a decision under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2014)), we review the decision of the agency and not the decision of the circuit court. *Wortham v. City of Chicago Department of Administrative Hearings*, 2015 IL App (1st) 131735, ¶ 13. An agency's decision on questions of fact will be affirmed when it is supported by the manifest weight of the evidence. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 534 (2006); *Wortham*, 2015 IL App (1st) 131735, ¶ 13. Where the question presented is a mixed question of fact and law, *i.e.*, whether the facts as established at the administrative hearing fall within the applicable law, the agency's determination will not be disturbed unless it is clearly erroneous. *Id.* Finally, an agency's decisions on questions of law are reviewed *de novo*. *Id.*

¶ 3    We have carefully examined the administrative record, including the evidence and testimony presented at the administrative hearing and, without summarizing that evidence, can say without hesitation that the hearing officer's determination that Zollar's dog is a dangerous animal within the meaning of the ordinance is amply supported by the manifest weight of the evidence. Whether, as Zollar contended, her dog is normally mild mannered and had never before acted in an aggressive manner, is beside the point. On September 13, 2013, Zollar's dog escaped from his dogsitter, raced down an alley where Jib was walking on a leash with her owner and grabbed the smaller dog in his jaws, initially by the hind flank and later by the midsection and neck, ultimately inflicting several wounds. These facts overwhelmingly support the finding that Eli is a "dangerous animal."

¶ 4    Zollar claims that the hearing officer erred in shifting to her the burden of establishing that the attack was provoked. Again, the record belies this assertion and reflects that the City established in its case-in-chief that the attack was unprovoked. No evidence supports Zollar's contention that either Jib or her owner did anything to provoke the attack. After Zollar's dog

attacked Jib, the latter's owner naturally attempted to protect her dog by hitting and kicking Eli. Zollar speculates that Eli was "playing" when he raced toward Jib and grabbed her between his jaws and only injured Jib after he was "assaulted" by Jib's owner or his dogsitter, who likewise attempted to stop the attack by hitting Eli. This scenario is pure speculation.

¶ 5    Further, under the City ordinance, "provocation" means that "the threat, injury or damage by the animal was sustained *by a person* who, at the time, was committing a willful trespass or other tort upon the premises occupied by the owner of the animal, or was tormenting, abusing, or assaulting the animal, or was committing or attempting to commit a crime." (Emphasis added.) Chicago Municipal Code § 7-12-020 (amended Nov. 19, 2008). Provocation within the meaning of the ordinance does not exist here for two reasons. First, Zollar's dog did not injure another person; he injured another animal. This court recently addressed this precise issue, finding that one animal cannot "provoke" another under the plain language of the ordinance. *Wortham*, 2015 IL App (1st) 131735, ¶ 18 ("[S]ince the language of the ordinance is clear and unambiguous, we will not depart from it in order to expand the meaning of provocation to the situation where a dog provokes another dog."). We agree with *Wortham*'s reasoning and see no need to further address the issue. Second, as we have noted, the conduct of Jib's owner (who was not injured) in defending her pet after the attack cannot reasonably be characterized as "tormenting, abusing, or assaulting" Eli. Thus, under the plain language of the ordinance, there is no basis for Zollar's claim that the attack was provoked.

¶ 6    Zollar also assigns error in the hearing officer's admission of the investigative report prepared by a City animal control inspector. It is well settled that the rules of evidence are relaxed in administrative hearings. Specifically, under the provisions of the Illinois Municipal Code governing hearings for code violations, "[r]ules of evidence shall not govern. The formal and technical rules of evidence do not apply in an adjudicatory hearing permitted under this Division. Evidence, including hearsay, may be admitted only if it is of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs." 65 ILCS 5/1-2.1-6 (West 2014). Where the investigator's report formed the basis of the ordinance violation citation and the City typically relies on the results of such investigations in citing animal owners under the ordinance, we cannot say it was an abuse of discretion to admit that report at the administrative hearing. The investigator also did not testify to the substance of any out-of-court statements by witnesses to the incident, which ameliorates any hearsay concerns. Finally, both Eli's dogsitter and Jib's owner–eyewitnesses to the occurrence–testified at the hearing and were subject to cross-examination, thus eliminating any possible prejudice from the admission of the report.

¶ 7    Lastly, Zollar contends that the dangerous animal ordinance is unconstitutionally "void for vagueness" because it fails to include provocation by other animals in the definition of that term. Zollar's argument is predicated on the specious contention that because the definition of "dangerous animal" under the ordinance refers only to an animal that attacks "without provocation," a reasonable person would understand that both a person and another animal could provoke an attack. Yet, in the same definitions section, "provocation" is defined to include only conduct by a person against an animal. Therefore, a reasonable person reading both definitions would understand that only a person can provoke an attack by tormenting, abusing or assaulting an animal. As we found in *Wortham*, there is nothing vague

about the ordinance; its language is clear and unambiguous and the definition of provocation, as relevant here, includes only deliberate conduct by a person directed against an animal which thereafter injures the person.

¶ 8 Zollar's real complaint is that the Chicago city council did not elect to include provocation by other animals within the definition of "provocation" in the ordinance. But this does not make the ordinance vague as applied here. We will not second-guess the city council's decision to limit the definition of provocation given that humans act "willfully" and animals do not. And because Zollar presented no evidence that Jib provoked the attack by Eli, we need not address whether an animal "provoked" by another animal can be declared dangerous under the ordinance. See *Hegwood v. City of Eau Claire*, 676 F.3d 600, 603 (7th Cir. 2012) (When addressing a vagueness as-applied challenge, courts examine the facts of the case exclusively and not any hypothetical set of facts under which the statute might be unconstitutional.). See also *People v. White*, 2011 IL 109689, ¶ 144 (Courts will not consider constitutional questions unless they are essential to the disposition of the case.).

¶ 9 Finding no error in the administrative decision, we confirm the Commission's order.

¶ 10 Confirmed.